UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 24-33-DLB-CJS

GLENDA MITCHELL, Administratrix
of the estate of Ryan G. Mitchell, *et al.*                          PLAINTIFFS


v.                      **MEMORANDUM OPINION AND ORDER**


CALEB SAVAGE, in his individual
capacity, *et al.*                                                   DEFENDANTS

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*

This matter is before the Court upon Defendant Caleb Savage's ("Savage's) Motion for Judgment on the Pleadings. (Doc. #12). Plaintiffs the Estate of Ryan Mitchell ("the Estate"), Glenda Mitchell, and Tracy Mitchell (collectively "the Mitchells") filed their Response (Doc. # 18), Defendant Savage filed his Reply (Doc. #19), and this matter is now ripe for review. For the reasons set forth herein, Defendant Savage's Motion for Judgment on the Pleadings is **granted** and the Mitchells are **dismissed** as individual plaintiffs.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

In the early morning hours of March 12, 2023, Defendant Savage, an officer with the Village of Ripley, Ohio Police Department ("RPD"), was the only RPD officer on duty. (Doc. # 8 ¶¶ 7 and 13). While Savage was on duty, a "county-wide radio dispatch" was issued by the Brown County Communication Center "regarding a complaint by a citizen that a vehicle had damaged some property in their yard." (*Id.* ¶ 14). The dispatch did not

1

call for assistance, but simply advised that the incident had occurred in Aberdeen, Ohio, a nearby town, and told officers to be on the lookout for the culprit.  (*Id.* ¶¶ 15-16).

Later, Savage left the Village of Ripley, Ohio ("Ripley") and began pursuing Ryan Mitchell ("Mitchell").  (Doc. # 8 ¶ 25).  At some point, Savage and Mitchell crossed the Ohio river into Kentucky.[1]  (*Id.* ¶ 23).  Savage pursued Mitchell at high speeds "down a narrow, winding, country road in Mason County, Kentucky."  (*Id.* ¶ 26).  During the pursuit, Mitchell lost control of his vehicle, crashed into a tree, flipped over, and then burst into flames.  (*Id* ¶ 34).  The Complaint alleges that Savage, aware of the crash, elected not to help Mitchell and instead left the scene of the crash without notifying anyone of what happened.  (*Id.* ¶¶ 36 and 39-40).  Mitchell died in the fire and his body "burned to ash." (*Id.* ¶¶ 43-44).

As a result of this incident, the Estate has asserted a Section 1983 claim against Savage for being "deliberately indifferent" to Mitchell's "serious medical needs" in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  (Doc. # 8 ¶ 56).  The Estate has also asserted several supplementary state law claims against Savage and Ripley.  (*See Id.*).  Finally, the Mitchells have asserted their own Section 1983 claims against Savage for deprivation of their rights to their son's body in violation of their Fourth and Fourteenth Amendment rights.  (*Id.* ¶¶ 46 and 57).  The Defendants have only moved for Judgment on the Pleadings with respect to the Estate's Section 1983 claim and for the Mitchells' Section 1983 claim.  (*See* Doc. # 12).

---

[1] It is unclear whether the pursuit began in Kentucky or in Ohio.  All that is clear is that Savage started the night in Ripley, Ohio and the pursuit concluded when Mitchell crashed in Mason County, Kentucky.  (*See* Doc. # 8 ¶ ¶ 20 and 34).

2

## II.  ANALYSIS

### A.  Standard of Review

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999). Such a motion pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As the Supreme Court explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quotations omitted). The claimant must put forward enough facts that the court could reasonably infer "that the defendant is liable for the misconduct alleged." *Id.*

In deciding a motion for judgment on the pleadings, the court must accept "all well-pleaded material allegations of the pleadings" from the non-moving party as true. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). However, as with a 12(b)(6) motion, this assumption of truth does not extend to "legal conclusions or unwarranted factual inferences." *JPMorgan*, 510 F.3d at 581-82 (citation and internal quotation marks omitted). The court may grant a Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of

3

law." *Id.* at 582. Courts may consider exhibits attached to the complaint without converting a 12(c) motion into a motion for summary judgment, as well as "public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion . . . so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. The Estate's Section 1983 Claim

Plaintiffs' Complaint contends that Savage "was deliberately indifferent to the serious medical needs of Ryan Mitchell which deprived him of the rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution." (Doc. # 8 ¶ 57). Section 1983 authorizes an individual to bring an action "against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 583 (6th Cir. 2012).

#### 1. Fourth Amendment Claims

In their Complaint, Plaintiffs allege that Savage's deliberate indifference to Mitchell's medical needs deprived Mitchell of rights secured by the Fourth Amendment to the United States Constitution. (Doc. # 8 at ¶ 56). In his Motion, Savage argues that the Estate's Section 1983 claim under the Fourth Amendment fails because constitutional claims for failure to render medical aid usually fall under the Fourteenth Amendment, and because even if a Fourth Amendment claim were viable here, Mitchell was never "seized" for Fourth Amendment purposes. (Doc. # 12 at 3-4) (*citing Esch v. Cty. of Kent*, 699 F. App'x 509, 515 (6th Cir. 2017)). In their Response, Plaintiffs, apparently in agreement with Savage, state that "[the] Estate's federal claims allege solely that Defendant

Savage's deliberate indifference to Mr. Mitchell's obvious medical need violated the Fourteenth Amendment." (Doc. # 18 at 6). In light of this concession, this Court will **grant** Defendant Savage's Motion for Judgment on the Pleadings with respect to Plaintiff's Fourth Amendment Section 1983 claim.

### 2. *Fourteenth Amendment Claim*

Plaintiffs' Complaint also contends that Savage "was deliberately indifferent to the serious medical needs of Ryan Mitchell," and that it was Savage's indifference which deprived Mitchell of his Fourteenth Amendment Rights. (Doc. # 8 ¶ 56). The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A general principle of the Due Process Clause is that it does not confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dep't. of Soc. Servs.*, 489 U.S. 189, 196 (1989). There are "two exceptions under which the Constitution 'imposes upon [the government] a corresponding duty to assume some responsibility for [the] safety and wellbeing' of an individual." *Sexton v. Cernuto*, 18 F.4th 177, 186 (6th Cir. 2021) (alterations in original) (*quoting DeShaney*, 489 U.S. at 196). They are "(1) the custody exception and (2) the state-created danger exception." *Jackson v. Schultz*, 429 F.3d 586 (6th Cir. 2005). Unfortunately for Plaintiffs, neither exception applies here.

#### a. The Custody Exception

Under the *DeShaney* custody exception, also called the "special relationship exception," a state "has a duty to protect an individual when it has 'so restrain[ed] an

5

individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety.'" *Sexton*, 18 F.4th at 187 (alteration in original) (*quoting Lipman v. Budish*, 974 3d 726, at 742 (6th Cir. 2020). In other words, the duty to provide an individual with basic needs arises when that individual is placed in custody. *Sexton*, 18 F.4th at 187. The Complaint alleges that Savage pursued Mitchell until Mitchell crashed his car, and then Savage—aware of the crash—left the scene without notifying anyone. (Doc. # 8 ¶¶ 25-41). Taking these facts as true, the issue is whether Mitchell was ever in custody during Savage's pursuit.

"Custody" for Fourteenth Amendment purposes is a "difficult and more exacting standard than a Fourth Amendment seizure." *Pierce v Springfield Twp. Ohio*, 562 F. App'x. 431, 437 (6th Cir. 2005) (*quoting Cutlip v. City of Toledo*, 488 Fed. Appx. 107, 114 (6th Cir. 2012)). "The overarching prerequisite for custody is an affirmative act by the state that restrains the ability of an individual to act on his own behalf." *Jackson*, 429 F.3d at 590; *see also Pierce*, 562 F. App'x. at 437 (*quoting DeShaney*, 489 U.S. at 200) (custody "requires that the state restrain an individual 'through incarceration, institutionalization, or other similar restraint'"). Here, despite the tragedy which occurred when Mitchell crashed his vehicle at a high rate of speed, Savage did not restrain Mitchell's liberty, and therefore the custody exception to *DeShaney* does not apply.

Mitchell was driving his car "at an excessive rate of speed" in Mason County, Kentucky which is not something that a person unable to act on his own behalf would be capable of doing. (Doc. # 8 ¶ 26). By initiating a pursuit, Savage did not put Mitchell "into a helpless position." *Cutlip*, 488 Fed. App'x. at 113. Mitchell's actions were "purely

6

voluntary," and the resulting crash was a result of Mitchell's voluntary decision to attempt to evade the police. *Id.* Mitchell could have stopped his car and pulled over at any time, but instead he chose to flee at a high rate of speed.

The Estate argues that an "attempted apprehension" by a police officer, regardless of whether force is actually used, creates a "special relationship" which gives rise to a Fourteenth Amendment duty to provide adequate medical aid. (Doc. # 19 at 5-6). This assertion is simply not supported by Sixth Circuit precedent. A persuasive case on this point is *Cutlip v. City of Toledo*, where police arrived at a decedent's home and the decedent reacted by retreating to his bedroom and placing a shotgun to his head. 488 Fed. App'x at 109. After a lengthy negotiation, the police became convinced that if they did not storm the room the decedent would shoot himself. *Id.* at 110. As the police entered his bedroom, the decedent pulled the trigger and killed himself. *Id.* at 110-111. The Sixth Circuit examined these facts, which can easily be characterized as an "attempted apprehension," and determined that the decedent was never in custody. *Id.* at 114.

Contrary to the Plaintiffs' assertion, neither *City of Revere v. Massachusetts General Hospital*, nor *Heeter v. Bowers*, stand for the proposition that a mere "attempted apprehension," rather than custody, gives rise to a duty to provide medical treatment. (Doc. # 18 at 4) (citing 463 U.S. 239 (1989) and 99 F.4th 900 (6th Cir. 2024)). In both of those cases, the fact that the suspect was placed in police custody gave rise to a duty to provide medical aid. *City of Revere*, 463 U.S. at 240, 244-245 (the city owed a duty to provide medical care to a "pretrial detainee," who was shot while attempting to evade the police); *Heeter*, 99 F.4th at 919 (after shooting a man five times in the chest, a police

7

officer ordered the man handcuffed then "stood idle as Mr. Heeter bled out, moaned, and struggled to breathe").

Simply put, the custody exception to *DeShaney* does not apply here because Savage did not affirmatively act to "restrain[] the ability of [Mitchell] to act on his own behalf." *Jackson*, 429 F. 3d at 590. During the pursuit Mitchell was entirely free to choose how fast to drive, which roads to drive down, or to stop his flight entirely. Mitchell was never in Savage's custody. It was an automobile accident, not an affirmative act of restraint, which resulted in Mitchell's death.

### b. The State-Created Danger Exception

In the alternative, the Estate argues that Savage owed a duty to provide medical care to Mitchell because Savage "took affirmative actions which increased the risk to Mr. Mitchell and posed a state-created danger." (Doc. # 18 at 7). The state-created danger exception to *DeShaney* stands for the principle that the state "may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).

> To show a state-created danger, plaintiff must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Id.* at 1066.

The Estate's claim fails on the first prong. The Amended Complaint is devoid of allegations that Savage in any way "increased the risk that [Mitchell] would be exposed

8

to an act of violence by a third party." *Id.* The Plaintiff's characterization of the state-created danger doctrine as not requiring harm caused by a third-party is misplaced.

In *Rhodes v. Michigan*, a case cited extensively in Plaintiff's Response, the Sixth Circuit explicitly stated that "[l]iability under the state-created danger theory is predicated upon affirmative acts by the state which either creates or increase the risk that an individual will be exposed to private acts of violence." 10 F.4th 665, 684 (6th Cir. 2021) (quoting *Kallstrom*, 136 F.3d at 1066); *see also Lipman v. Budish*, 974 F.3d 726, 746-47 (6th Cir. 2020) (finding the state-created danger doctrine to apply where a social worker interviewed a child in front of her abusive parent because that action "increased the chances that a private actor would cause the plaintiff harm"); *Nelson v. City of Madison Heights*, 845 F.3d 695 (6th Cir. 2017) (the state-created danger doctrine applied where a police officer revealed the identity of a confidential informant to a drug dealer during an arrest because by doing so he increased the likelihood that the drug dealer would exact revenge); *Kallstrom*, 136 F.3d at 1067 (by releasing sensitive information about undercover police officers who helped take down a gang, the city had placed the officers in danger of violent retaliation in violation of their "liberty interest in personal security").

The Estate has failed to cite any Sixth Circuit caselaw where the state-created danger exception was held to apply where the harm caused was not third-party violence or increased risk of third-party violence. (*See* Doc. # 8).[2] Because Plaintiffs failed to plead facts sufficient to trigger the state-created danger exception or the custody

---

[2] The one case that the Estate does cite is *Tagstrom v. Enockson*, 857 F.2d 502 (8th Cir. 1988). Setting aside the fact that *Tagstrom* is not binding on this Court, the case makes no mention of the state-created danger doctrine. *Id.* That court's classification of the plaintiff as a "pretrial detainee[]" indicates that the Eighth Circuit was analyzing an officer's duty to provide medical care under the custody exception.

exception to *DeShaney*, the Estate's Section 1983 claim predicated on the Fourteenth Amendment fails, and is subject to dismissal.

### C. The Mitchells' Section 1983 Claim to Mitchell's Body

The Mitchells have themselves asserted claims for a deprivation of their right to their son's body. (Doc. # 8 ¶¶ 46, 57). In their Response, the Mitchells clarified that this was a "substantive due process claim for the deprivation of their own rights after the loss of their son Ryan's body."[3] (Doc. # 18 at 12).

Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. "The due process clause has both procedural and substantive components." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citing *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010). Here, there is no question that Savage, a police officer, was acting under color of state law. (*See* Docs. # 8). However, the Mitchells' loss of control of their next of kin's body is not a constitutional "deprivation" for purposes of substantive due process.

The doctrine of substantive due process says that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the

---

[3] In the Amended Complaint the Plaintiffs allege that Savage "denied to Glenda and Tracy Mitchell their right to substantive Due Process, secured by the Fourth and Fourteenth Amendments to the United States Constitution." (Doc. # 8 ¶ 57). This Court will treat the statement in the Plaintiffs' Response, that this is a "substantive due process claim for the deprivation of their own rights after the loss of their son Ryan's Body," as clarifying that they only intend to pursue a claim under the Fourteenth Amendment.

procedures employed." *Range*, 763 F.3d at 588 (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). The class of interests protected by substantive due process is "narrower than those protected by procedural due process." *Range*, 763 F.3d at 588 n.6 (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003)). The interests protected by substantive due process "are 'loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience.'" *Doe v. Miami Univ.*, 882 F.3d 579, 597-98 (6th Cir. 2018) (quoting *Valot v. Se. Local Sch. Dist. Bd. Of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)); *see also Range*, 763 F.3d at 588 (6th Cir. 2014) (quoting *Bell*, 351 F.3d at 249-50) (the "narrow class of interests" protected by substantive due process includes "those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience'")

In their Complaint, the Mitchells attempt to fit their claims into both categories. (Doc. # 8 ¶ 46) ("Defendant Savage's actions resulted in the deprivation of the next of kin's right to their son's body"); (*Id.* ¶ 52) ("Defendant Savage's actions constituted an arbitrary abuse of government power which shocks the conscience"). As will be shown below, the Mitchells have failed to plead that they were deprived of a right secured by substantive due process.

### 1. Constitutional Guarantee

The Mitchells assert in their Complaint that the right violated was their "right to their son's body." (Doc. # 8 ¶ 46). The Mitchells' claim that their right to their son's body is grounded in Kentucky law. (Doc. # 18 at 12-13) (internal citations omitted) (quoting *Harod v. Caney*, 547 S.W.3d 536, 542 (Ky. Ct. App. 2018) ("In Kentucky there is a legal right to

11

the bodies of the dead, which the courts will recognize and protect by the proper action."). However, a mere "deprivation of a state-created right is, by itself, insufficient to support a substantive due process claim in this circuit." *Callihan v. Sudimack*, No. 96-3711, 1997 WL 397212, at *3 (6th Cir. July 10, 1997) (citing *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990)). Therefore, in order to properly state a claim for a substantive due process violation, the Mitchells must show that the right to their son's body is "fundamental." This they have failed to do.

On at least two occasions, the Sixth Circuit has held that, for purposes of procedural due process, a decedent's next of kin have a property interest in the decedent's body. *Whaley v. Cty. of Tuscola*, 58 F.3d 1111, 1117 (6th Cir. 1995) (holding that next of kin have a "legitimate claim of entitlement and thus a property interest in a dead relative's body" under Michigan law which they may not be deprived of without due process); *Brotherton v. Cleveland*, 923 F.2d 477, 481-82 (6th Cir. 1991) (holding that a widow has a "legitimate claim of entitlement," based on Ohio law, in the corneas of her husband which is protected by the Due Process Clause of the Fourteenth Amendment). However, whether the right to bodies of the dead is protected by substantive due process is another matter.

"Substantive due process 'affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental.' It protects those interests, some yet to be enumerated, 'implicit in the concept of ordered liberty.'" *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350-51 (6th Cir. 1992) (quoting *Charles*, 910 F.2d at 1353 (internal quotations omitted). "In recognizing unenumerated rights, the Supreme Court counsels hesitation: 'We must exercise the utmost care whenever we are

12

asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences' of the judiciary." *Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).  The Sixth Circuit has never held that there is a fundamental right to bodies of the dead held by next of kin. *Range*, 763 F.3d at 588-89 (pointing out that at least one "sister circuit" has found that such a right is "fundamental," but not holding that such is the case in this Circuit).

In support of their claim, the Mitchells cite *Culberson v. Doan*, 125 F. Supp. 2d 252 (S.D. Ohio 2000).  In *Culberson*, Carrie Culberson was murdered by her longtime abusive boyfriend.  *Id.* at 257.  During a search of the boyfriend's family property, a cadaver dog indicated that it may have detected Carrie's scent in a pond located on the property.  *Id.*  The search team informed the police chief, Payton, that they wanted the pond drained.  *Id.*  Payton declined to drain the pond that day and sent everybody home.  *Id*.  The next day, when the pond was drained Carrie's body was missing, but "footprints were visible on the bottom of the pond and a muddy path of weeds led away from the pond . . . ."  *Id*.  The body was never found but after the boyfriend was found guilty of Carrie's murder, Carrie's family sued Payton (among others) arguing that "the Due Process Clause of the Fourteenth Amendment imposed a duty on Chief Payton that he allegedly violated by depriving the Culberson Family of the right to recover and possess the body of Carrie Culberson."  *Id.* at 264.

For purposes of procedural due process, the court in *Culberson* held that the family had a "protected property interest in the remains of Carrie's body . . . ."  *Id.* (quoting *Culberson v. Doan*, 65 F. Supp. 2d 701, 715-16 (S.D. Ohio) (denying defendant's motion

to dismiss). However, for purposes of substantive due process, the *Culberson* court's analysis was more nuanced than Plaintiffs make it out to be. The court did not find that there was an absolute right to Carrie's body held by her family, which they could not be deprived of "regardless of the adequacy of the procedures employed." *Id.*; *Range*, 763 F.3d at 588 (quoting *Pearson*, 961 F.2d at 1216). Rather, the court held that the family had presented enough evidence to submit the question to a jury of whether "Payton deprived Plaintiffs of their ability to use self-help, made [the] [p]laintiffs more vulnerable to the danger that Carrie's body would be removed from the pond, or took on an affirmative duty to prevent harm to Carrie and [the] [p]laintiffs by taking actual control of the crime scene . . . ." *Id.* The court based its analysis on *DeShaney*, finding that the plaintiffs had established Payton was in "constructive control" of Carrie's body, or in the alternative that Payton had "functional custody" of Carrie's body, which gave rise to a duty to protect the family's right to that body. *Id.* at 269.

There are several reasons why the Court finds *Culberson* is not persuasive. Even if this Court were to follow the analysis set forth in *Culberson*, the result here would not be the same. There are no facts alleged in the Amended Complaint which indicate that Savage was ever in "constructive control" or "functional custody" of Mitchell's body. (*See* Doc. # 8). As this Court has already explained, Savage never had Mitchell in his custody. *See supra* II(B)(2)(i). The Amended Complaint does not allege that Savage ever took control of Mitchell's body, assumed a duty to protect Mitchell's body, or prevented the Mitchells from retrieving Mitchell's body. (*See* Doc. # 8). All that the Amended Complaint alleges is that "Defendant Savage had functional custody of Mr. Mitchell following the crash and was in constructive control of Mr. Mitchell's body thereafter." (Doc. # 8 ¶ 38).

14

These statements are legal conclusions and therefore this Court "need not accept [them] as true." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 at 581-82 (6th Cir. 2007).

The Court recognizes that the Mitchells' right to their son's body was clearly important to them, and the loss of their son's body is undoubtedly disturbing to them. However, interference with every right possessed by individuals is not actionable under the Fourteenth Amendment. Substantive due process only affords "those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Sutton.*, 958 F.2d at, 1350-51 (quoting *Charles*, 910 F.2d at 1353 (internal quotations omitted). In this Circuit, the Mitchells' right to their son's body is not such a right.

### 2.  *Shocks the Conscience*

The Mitchells also argue that Savage's conduct "shocks the conscience." (Doc. # 8 ¶ 52). "[T]his characterization applies to only the most egregious official conduct, conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." *Doe v. Miami Univ.*, 882 F.3d 579, 599 (6th Cir. 2018) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012)) (alteration in original). The Sixth Circuit has admittedly been inconsistent in applying this standard; sometimes requiring that the conscience-shocking conduct reach a constitutionally protected right, and sometimes holding that "government action may certainly shock the conscience or violate substantive due process without a liberty or property interest at stake." *Range v Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *EJS Props., LLC v. City of Toledo*, 98 F.3d 845, 861-62 (6th Cir. 2012)). Regardless, assuming that the Mitchells were deprived of a constitutionally protected right, they have still failed to state a claim for a substantive due process violation.

15

"The Supreme Court has explained that '[h]istorically, the guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property.'" *Chambers v. Sanders*, 63 F.4th 1092, 1097 (6th Cir. 2023) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)) (alteration in original) (emphasis in original). Merely negligent conduct by a state actor which causes harm to an unintended victim does not rise to the level of conscience shocking. *Chambers*, 63 F.4th at 1097-98 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). To state a claim for a constitutional violation here, it is not enough that the Mitchells allege that Savage acted with an intent to harm Mitchell, rather they must show "a culpable mental state directed toward them." *Chambers*, 63 F.4th at 1098; *see also Range*, 763 F.3d at 591 (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) ("A government actor who has time to deliberate shocks the conscience if the actions 'were taken with deliberate indifference towards the plaintiff's federally protected rights.'"); *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (noting that Section 1983 actions are personal to the victim and no action may lie under Section 1983 "for emotional distress, loss of a loved one, or any other consequent collateral injuries suffered personally by the victim's family members").

For example, in *Chambers* a man named Danny Burton was wrongfully convicted of murder and spent over thirty years in prison. *Chambers*, 63 F.4th at 1095. Burton was released when it came to light that Detective Ronald Sanders used improper methods to secure testimony of witnesses, including threats and physical violence. *Id.* After Burton was released, his sons sued Sanders and the city for a violation of their due process rights to family integrity. *Id.* at 1095. The Sixth Circuit said that "[t]he government official

16

must have, at a minimum, acted with a culpable state of mind directed at the plaintiff's family relationship or a decision traditionally within the ambit of the family." *Id.* at 1100. Acknowledging Sanders' troubling and wrongful conduct, the court held that Burton's children had failed to state a claim because they failed to allege that Sanders acted with a culpable state of mind directed towards them. *Id.* at 1101.

The Mitchells have not alleged that Savage acted with a culpable mental state directed towards them. They have only alleged that Savage acted with a culpable mental state directed towards their son. (Doc. # 8 ¶ 51) ("At all times relevant to this action, Defendant Savage acted intentionally, with wanton and willful disregard, and/or with deliberate indifference to the rights and safety of Mr. Mitchell."). Without more, the Mitchells' claim resembles the type of "collateral injur[y] suffered personally by [a] victim's family members" which is not actionable in this Circuit. *Claybrook*, 199 F.3d at 357. While the facts alleged in the Amended Complaint may be troubling, all wrongs are not constitutionally actionable. The lack of any specific allegations of a culpable mental state towards the Mitchells is fatal to their claim.

### III.   CONCLUSION

Thus, for the reasons set forth herein, **IT IS ORDERED** as follows:

(1)   Defendant's Motion for Judgment on the Pleadings (Doc. # 12) is **GRANTED;** and

(2)   Plaintiffs Tracy Mitchell and Glenda Mitchell are **DISMISSED** from this action in their individual capacities.

This 7th day of October, 2024.



Signed By:
David L. Bunning
United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2024\24-33 MOO On MJOP.Docx